# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

MARILYN MORALES-FONT,

    Plaintiff,

        v.

AIR CHARTER, INC., ET AL.

    Defendants.

**Civil No. 17-1033 (SEC)**

## OPINION AND ORDER

Plaintiff Marilyn Morales brings this action against Air Charter, Inc. and its President (collectively, Defendants) seeking compensation for the death of her son, Leoniv Diou.

Pending before the Court is Defendants' motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(1) & (6). ECF. No. 4. Because the Court finds that it lacks subject matter jurisdiction, it does not entertain the merits of Defendants' Rule 12(b)(6) motion.

### I. Factual and Procedural Background

Leoniv Diou worked as an air pilot for Air Charter. He passed away on October 6, 2013, after his airplane crashed in the ocean while flying from Vieques to Culebra—two islands within the archipelago of Puerto Rico. In March 2016, the National Transportation Safety Board issued a report stating that the probable cause of the accident was "[t]he pilot's failure to maintain airplane control," albeit "for reasons that could not be determined because the wreckage was not recovered." ECF No. 4-1, p. 10.

Shortly thereafter, Diou's mother filed suit in local court alleging that her son's death was a result of Air Charter's failure to comply with certain federal laws and regulations. Air Charter quickly moved to dismiss that action arguing, among other things, that it was immune from suits stemming from any work related accident (such as the one suffered by Plaintiff's son) under the Puerto Rico Workmen Compensation Act, P.R. Laws Ann. tit.11, § 21. Recently, the state court adopted this argument and dismissed the case.

In January 2017, before the local court dismissed her claim, Plaintiff filed this parallel suit invoking federal question jurisdiction under 28 U.S.C. § 1331. The complaint points to the Federal Aviation Administration Authorization Act (the Aviation Act), 49 U.S.C. § 40101 et seq., and its implementing regulations as the source of federal jurisdiction. Defendants moved to dismiss this action arguing, among other things, that the Aviation Act does not provide a private right of action and therefore the complaint does not state a claim arising under the laws of the United States.

Plaintiff's response does little to counter Defendant's basis for dismissal. Instead, she attempts to invoke federal jurisdiction on an independent ground. She contends that pursuant to the recent Supreme Court decision in Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863 (2016), her cause of action, despite arising exclusively under Puerto Rico law, confers federal question jurisdiction.

**II.    Standard of Review**

The party invoking federal subject-matter jurisdiction always carries the burden of proving its existence. Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993). When, as here, the defendant mounts a facial jurisdictional challenge, no fact-finding is required. Instead, the court "accepts the plaintiff's version of jurisdictionally-significant facts" and evaluates whether they sufficiently provide "an adequate basis for subject-matter jurisdiction." Valentín v. Hosp. Bella Vista, 254 F.3d

358, 363 (1st Cir. 2001).[1] Although the court must "take as true the well-pleaded facts of the complaint, a plaintiff cannot rest a jurisdictional basis merely on unsupported conclusions or interpretations of law." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (internal citations and quotations omitted).

### III. Applicable Law and Analysis

In Bonano v. E. Caribbean Airline Corp., 365 F.3d 81 (1st Cir. 2004), the First Circuit examined the Aviation Act and squarely held that, with a single exception inapplicable to this case, the statute does not provide a private right of action. Id. at 85 (citing 49 U.S.C. § 46108).[2] It also rejected the plaintiff's argument that the regulations created by the Federal Aviation Administration could confer, on their own, a private right of action. This is so because "[a] private right of action, like substantive federal law itself, must be created by Congress," which means that "[t]he source of any such right must be found in the text of the statute." Bonano, 365 F.3d at 84, citing Alexander v. Sandoval, 532 U.S. 275, 291 (2001) ("it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself").

Undeterred, Plaintiff tries to sidestep the holding in Bonano arguing that the source of federal jurisdiction lies within the Aviation Act's definitions of "interstate air commerce" and "interstate air transportation." 49 U.S.C. § 40102(a)(24) & (25). These definitions encompass commerce and transportation by aircraft "between a place in a territory or possession of the United States and another place in the same territory or possession." Id. Since Puerto Rico is a territory of the United States and Plaintiff's son

---

[1] In contrast, when a defendant mounts a factual jurisdictional challenge, i.e. "controverting the accuracy (rather than the sufficiency) of the jurisdictional facts" asserted in the complaint, "the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

[2] To wit, 49 U.S.C. § 46108 provides a private right of action to enforce § 41101(a)(1), which allows an air carrier to provide air transportation only if the carrier holds a certificate authorizing the activity.

was flying within Puerto Rico when his plane crashed, the argument goes, he was engaging in interstate air transportation and thus "his death is a federal matter." ECF. No. 6, p. 3. This argument goes nowhere.

To start, it is unclear whether the Aviation Act—in its current form—treats Puerto Rico as a territory or possession of the United States for purposes of regulating air travel within Puerto Rico.[3] But even if it did, the distinction is without significance here. As explained above, this federal statute does not provide a private right of action. Therefore, the flight could have been between Puerto Rico and any other State of the Union and Plaintiff would still lack a cause of action arising under the Aviation Act.

Realizing that her claim under the Aviation Act is doomed, Plaintiff puts forth a set of vague and undefined claims to save her case. She first says that "death resulting from negligence," violates the "the right to life protected by … the Declaration of Independence," Due Process, and the Constitution of Puerto Rico. ECF No. 6, p. 3. But none of these provisions afford a plaintiff a cause of action—at least not against private persons.

For instance, although the Declaration of Independence describes certain "unalienable rights," including "Life, Liberty and the pursuit of Happiness," it does not give rise to a private cause of action to enforce these rights. See Troxel v. Granville, 530 U.S. 57, 91 (2000) (Scalia, J., dissenting) ("The Declaration of Independence ... is not a legal prescription conferring powers on the courts"); see also Coffey v. United States,

---

[3] It is true that the Federal Aviation Act of 1958, the precursor to the current statute, treated Puerto Rico as a possession of the United States, and was therefore applicable to air travel within Puerto Rico. See United States v. López Andino, 831 F.2d 1164, 1174 n. 11 (1st Cir. 1987) (Torruella, J., concurring). The former version defined the term "possessions of the United States" and stated that "all references to possessions of the United States [would be] treated as also referring to the Commonwealth of Puerto Rico." 72 Stat. 731 Pub. L. 85—726,§ 101, August 23, 1958. The current statute, however, does not contain a definition of territory or possession of the United States and does not mention the Commonwealth of Puerto Rico in its definitions of "interstate air commerce" or "interstate air transportation." See 49 U.S.C. § 40102; cf. United States v. Maldonado-Burgos, 844 F.3d 339, 341 (1st Cir. 2016) (holding that Puerto Rico is not a territory or possession of the United States under § 2421(a) of the Mann Act because, among other reasons, Puerto Rico is not explicitly mentioned in the statute).

939 F. Supp. 185, 191 (E.D.N.Y. 1996) (the Declaration of Independence "does not grant rights that may be pursued through the judicial system"). And Plaintiff's Due Process violation claim fails at the outset because she has not alleged that state action was involved in her son's death. See e.g. Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 485, (1988) ("The Fourteenth Amendment protects [Due Process] interests, however, only from a deprivation by state action"). The same holds true for her claims under the Puerto Rico Constitution for which, barring violations of the right to privacy, state action is a prerequisite. See e.g. Vega v. Telefónica, 156 P.R. Dec. 584, 600 (2002).

The more insidious problem lies in Plaintiff's second argument, which relies on a warped reading of the Supreme Court's decision in Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863 (2016). She intimates that after Sánchez Valle, all causes of action—regardless of whether they stem from Puerto Rico or federal law—imply federal question jurisdiction. See ECF No. 6, p. 3. In Plaintiff's view, "[t]hese are new times in Puerto Rico and we must act accordingly to the new reality." ECF No. 8, p. 2. Of course, if this were true, then Sánchez Valle absolutely upended the constitutional structure of Puerto Rico and its relationship with the United States.

This is not the first time that a litigant has raised this type of argument in this district. See Payne v. Alvarez-Ortiz, 229 F. Supp. 3d 115, 116 (D.P.R. 2017) (rejecting the argument that following Sánchez Valle, Puerto Rico is no longer shielded by 11th Amendment Immunity); United States v. Rivera-Herrera, 2016 WL 6216329, at *1 (D.P.R. 2016) (rejecting the contention that Sánchez Valle overruled a long standing First Circuit precedent that Puerto Rico is deemed to be a State under §1 of the Sherman Act). In all of its variants, the argument is fundamentally flawed and departs from what the Supreme Court actually meant in its opinion. Thus, in discussing why Plaintiff's argument—that pursuant to Sánchez Valle, her tort claim under Puerto Rico law entails federal jurisdiction—is a nonstarter, the Court takes this opportunity to clarify what Sánchez Valle holds, and more importantly, what it does *not*.

In Sánchez Valle, the Commonwealth indicted two men separately for selling firearms without a permit in violation of the Puerto Rico Arms Act of 2000, P.R. Laws Ann § 458. Meanwhile, federal grand juries indicted the two state court defendants based on the same transactions for violations of analogous federal gun trafficking statutes. After pleading guilty to the federal charges, each defendant moved to dismiss the Commonwealth charges on double jeopardy grounds. The prosecutors in both cases countered that Puerto Rico and the United States were different sovereigns for double jeopardy purposes, and therefore Puerto Rico could successively prosecute each of the two defendants.

The trial courts agreed with the defendants and dismissed the charges. The Puerto Rico Court of Appeals consolidated the actions and reversed those decisions. The Puerto Rico Supreme Court later reversed the Court of Appeals' decisions and dismissed the charges against both defendants on double jeopardy grounds. The Puerto Rico government sought review to the United States Supreme Court, which granted *certiorari* and affirmed.

The Supreme Court held that Puerto Rico and the United States cannot both prosecute a defendant for the same criminal conduct because, for double jeopardy purposes only, Puerto Rico is not a separate "sovereign" from the Federal Government. Yet, under Plaintiff's reading, Puerto Rico has no sovereignty separate from the United States for any purpose at all—not even for enacting and enforcing its own laws. With this expansive reading of Sánchez Valle, Plaintiff posits that her wrongful death action under Puerto Rico law confers federal jurisdiction upon this Court. ECF No. 6, p. 3. To explain why Plaintiff's position is mistaken, it is necessary to discuss Sánchez Valle in detail.

Sánchez Valle involved the dual-sovereignty doctrine of the Double Jeopardy Clause. The general rule under the Double Jeopardy Clause is that "a person cannot be prosecuted twice for the same offense." Sánchez Valle, 136 S. Ct. at 1870. But pursuant to the dual-sovereignty doctrine, "two prosecutions…are not for the same offense if

brought by different sovereigns—even when those actions target the identical criminal conduct through equivalent criminal laws." Id. The reason for this outcome, the Court explained, is that "when the same act transgresses the laws of two sovereigns, it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences." Id. (quoting Heath v. Alabama, 474 U.S. 82, 88 (1985)).

While Sánchez Valle held that Puerto Rico and the United States were not separate sovereigns for double jeopardy purposes, the majority recognized that the term "'sovereignty' in this context, does not bear its ordinary meaning"—that is, "[t]he degree to which an entity exercises self-governance." Id. And this is precisely where Plaintiff's argument breaks down.

"[T]he inquiry (despite its label) does not probe whether a government possesses the usual attributes, or acts in the common manner, of a sovereign entity." Id. Indeed, a government's ability to enact and enforce its own criminal laws, both critical indicators of self-governance, plays no role in the analysis. Id. Rather, exclusively to determine whether double jeopardy attaches, the Court uses a historical, not functional test that hinges on the "'ultimate source' of the power undergirding the respective prosecutions." Id. at 1871. The test looks at the past: the "deepest wellsprings, not the current exercise, of prosecutorial authority." Id. (emphasis added). Applying this test, the Court held that Puerto Rico is not a separate sovereign from the United States for double jeopardy purposes. It reasoned that since Puerto Rico did not possess "independent prosecutorial power" when it was acquired by the United States, but was instead under "Spanish Sovereignty," it could not benefit from the dual-sovereignty doctrine. Id. at 1875.[4]

---

[4] Sánchez Valle has been characterized by some in the public sphere as a seminal case regarding Puerto Rico's political status. Far from it. At its core, Sánchez Valle was a criminal case where the Supreme Court narrowly addressed a fundamental injustice in the American legal system—the dual sovereignty doctrine that permits two jurisdictions within the same nation to prosecute a defendant for the same offense. The Court is not aware of any other civilized country that allows this. In Sánchez Valle, the Supreme Court was able to remedy this seemingly unfair situation but only as to Puerto Rico, given the Commonwealth's unique constitutional relationship with the United States. In her concurrence, however, Justice Ginsburg noted that the dual sovereignty doctrine hardly serves the double jeopardy purpose of shielding "individuals from the harassment of multiple prosecutions for the same misconduct." Sánchez Valle, 136 S. Ct. at 1877 (Ginsburg, J., concurring) (citing Green v. United States, 355 U.S.

Even while focusing on the idiosyncrasy of the dual-sovereignty doctrine, "the Supreme Court took pains to acknowledge the 'distinctive, indeed exceptional, status as a self-governing Commonwealth' that Puerto Rico occupies today." United States v. Maldonado-Burgos, 844 F.3d 339, 344–45 (1st Cir. 2016) (quoting Sánchez Valle, 136 S.Ct. at 1874.) After the approval of its constitution in 1952, "Puerto Rico became a new kind of political entity, still closely associated with the United States but governed in accordance with, and exercising self-rule through, a popularly ratified constitution." Sánchez Valle, 136 S.Ct. at 1874.[5] From that moment, as the Supreme Court recognized more than four decades ago, Congress "relinquished its control over [the Commonwealth's] local affairs[,] grant[ing] Puerto Rico a measure of autonomy comparable to that possessed by the States." Id. at 1874 (quoting Examining Bd. of Engineers, Architects and Surveyors v. Flores de Otero, 426 U.S. 572, 597 (1976)).[6] This means that "Puerto Rico, like a state, is an autonomous political entity, sovereign over

---

184, 187 (1957)). She suggested that the dual sovereignty exception might entail "an affront to human dignity inconsistent with the spirit of [our] Bill of Rights," and pointed to a plethora of commentators that have criticized the doctrine. Id. (internal citations and quotations omitted). A criticism that intensified "after the Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment was also applicable to the states ...." Id. (parenthetically quoting 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 25.5(a), p. 851 (4th ed. 2015)). Justice Ginsburg, therefore, invited further discussion on the issue "in a future case in which a defendant faces successive prosecutions by parts of the whole USA." Id. Ginsburg seems to agree, at least in part, with the concurring opinion by Justice Liana Fiol Matta from the Puerto Rico Supreme Court, which mounted a detailed analysis explaining the weaknesses of the historical justifications for the dual-sovereignty doctrine. See Pueblo v. Sánchez Valle, 192 P.R. Dec. 594, 705-727 (2015) (Fiol Matta, J., concurring).

[5] For a detailed discussion of the constitutional relationship between Puerto Rico and the United States, see Adam W. McCall, Why Congress Cannot Unilaterally Repeal Puerto Rico's Constitution, 102 Cornell l. Rev. 1367 (2017); see also DAVID A. REZVANI, SURPASSING THE SOVEREIGN STATE: THE WEALTH, SELF-RULE, AND SECURITY ADVANTAGES OF PARTIALLY INDEPENDENT TERRITORIES 169-189 (Oxford University Press) (2014).

[6] The Supreme Court and the First Circuit have treated Puerto Rico as a State in the application of federal statutes that are silent on whether Puerto Rico should be treated as a State or a territory. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 674-75 (1974) (holding that Puerto Rico was a "state" for the purposes of 28 U.S.C. § 2281, which required a three-judge court for a proceeding seeking to enjoin the operation of a "state statute" as unconstitutional) (quoting Mora v. Mejías, 206 F.2d 377, 387 (1st Cir. 1953) ("Puerto Rico has thus not become a State in the federal Union like the 48 States, but it would seem to have become a State within a common and accepted meaning of the word")); Córdova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A., 649 F.2d 36, 42 (1st Cir. 1981) (holding that Puerto Rico is treated as a State under § 1 of the Sherman Act).

matters not ruled by the [Federal] Constitution." Id. (emphasis added) (parenthetically quoting Rodríguez v. Popular Democratic Party, 457 U.S. 1, 8 (1982)).

The critical observation in all of this is that, even while the narrow holding in Sánchez Valle bent to the will of an idiosyncratic test, the Supreme Court still reaffirmed Puerto Rico's "sovereignty" in the ordinary sense of the word. Thus, Plaintiff's contention that "all of [Puerto Rico's] judicial and legal establishment derives its authority from the Congress of the United States" is based on a broadly mistaken reading of the holding in Sánchez Valle. ECF No. 8, p. 2. Indeed, the majority specifically rejected this proposition stating that the "power to enact and enforce criminal law now proceeds … from the Puerto Rico Constitution as 'ordain[ed] and establish[ed]' by 'the people.'" Sánchez Valle, 136 S.Ct. at 1875 (emphasis added) (quoting P.R. Const., Preamble.)

The outcome in Sánchez Valle was a result of the historical framework of the dual-sovereignty test, which "compelled the Court to look not to the present but to the distant past to ascertain 'the ultimate source of Puerto Rico's prosecutorial power.'" Maldonado-Burgos, 844 F.3d at 344–45 (quoting Sánchez Valle, 136 S.Ct. at 1874). But if the test "hinged on measuring an entity's self-governance," then Puerto Rico, like the States, would have been deemed a separate sovereign from the United States for double jeopardy purposes, Sánchez Valle, 136 S. Ct. at 1874, just as it has been deemed in the sovereign immunity context even before the adoption of the Puerto Rico Constitution. See People of Porto Rico v. Rosaly y Castillo, 227 U.S. 270 (1913).

In sum, the holding in Sánchez Valle did not alter the structure of the constitutional relationship between Puerto Rico and the Federal Government,[7] and certainly did not expand federal jurisdiction to include all laws enacted by the

---

[7] For a detailed analysis on how the holding in Sanchez Valle may help to further develop the constitutional relationship between Puerto Rico and the United States, see Rafael Hernández Colón, The Evolution of Democratic Governance under the Territorial Clause of the U.S. Constitution, 50 Suffolk U. L. REV. (Forthcoming 2017).

Commonwealth's legislature.[8] Neither did it decrease the sovereignty that Puerto Rico acquired under its Constitution. The Sánchez Valle decision only removed the Commonwealth's ability to prosecute a defendant that has been previously prosecuted by the Federal Government for the same crime. If that effects a decrease in Puerto Rico's sovereignty, then it stands to reason that the holding in Sánchez Valle also limited the sovereignty of the United States, inasmuch as the Federal Government is barred by double jeopardy from prosecuting a defendant that was previously prosecuted by the Commonwealth. See Santana-Ríos v. United States, 235 F. Supp. 3d 386, 387 (D.P.R. 2017) ("the Commonwealth's prosecution, conviction, and sentence of an individual bars his subsequent prosecution by federal authorities for the same conduct under equivalent criminal law") (citing United States v. Colón, 213 F. Supp. 3d 297 (D.P.R. 2016)).

## IV. Conclusion

Because Plaintiff provides no basis for federal jurisdiction, this case must be dismissed. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of September, 2017.

          *s/ Salvador E. Casellas*
          SALVADOR E. CASELLAS
          U.S. Senior District Judge

---

[8] Evidently, Congress has never intended Puerto Rico law to be treated as federal law for purposes of jurisdiction under 28 U.S.C. § 1331. Otherwise, the definition of "States" as including "the territories, the District of Columbia, and the Commonwealth of Puerto Rico" in the diversity jurisdiction statute, 28 U.S.C. § 1332(e), would be superfluous.